UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------------------X

STEPHEN BURROWES,

                                             Plaintiff,

-against-

THE CITY OF NEW YORK, a municipal corporation;
POLICE OFFICER ANDRE MORRIS
(Shield No. 15124), POLICE OFFICER NATHANIEL
RAMOS (Tax. No. 937838) & SERGEANT DOUGLAS
MOODIE (Tax No. 946023) in their individual and official
capacities,

                                             Defendants.
---------------------------------------------------------------------------X

**AMENDED COMPLAINT**
15-cv-5097 (ENV)(CLP)

JURY TRIAL DEMANDED

Plaintiff, Stephen Burrowes, by his attorney, Ken Womble, alleges for his complaint against the defendants as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action for compensatory damages, punitive damages, and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights guaranteed by the Constitutions of the Unites States and the State of New York.

## JURISDICTION

2. This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the Fourth and Fourteenth Amendments to the United States Constitution.

3. Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

4. Plaintiff invokes this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over any and all state constitutional or common law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same controversy.

Plaintiff has satisfied all procedural prerequisites with respect to his state law claims: Plaintiff served notice of claim upon the City within ninety (90) days of the incident underlying his claims and has otherwise complied with the statutory requirements of the General Municipal Law of the State of New York. Although thirty (30) days have elapsed since service of his initial notice of claim, the City has not adjusted or paid such claim.

## VENUE

5. Venue is properly laid in the Eastern District of New York under 28 U.S.C. § 1391(b)(2), in that this is the District in which the events or omissions underlying the claim arose.

## JURY DEMAND

6. Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

7. The plaintiff is and was at all relevant times a citizen of the City and State of New York.

8. Defendant, the City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

9. Defendant, the City of New York, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

10. At all times hereinafter mentioned, the individually named defendants, Police

Officer Andre Morris (Shield No. 15124), Police Officer Nathaniel Ramos (Tax No. 937838), and Sergeant Douglas Moodie (Tax No. 946023) were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

11. At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

12. Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

13. Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

### **FACTS**

14. On June 26, 2015, at approximately 9:28 a.m., plaintiff Stephen Burrowes was legally operating his vehicle in the vicinity of East 98th Street and Farragut Road, Brooklyn, New York.

15. Plaintiff Stephen Burrowes had been notified by his daughter's school that his daughter was unwell, and he was driving to pick her up from school.

16. Plaintiff Stephen Burrowes was operating with a restricted driver license. He was authorized to travel to his daughter's school.

17. The plaintiff was pulled over by defendant police officers even though he had violated no laws.

18. One of the defendant police officers approached plaintiff and requested plaintiff

3

Stephen Burrowes' driver license. Plaintiff Stephen Burrowes complied and provided defendant police officer with his driver's license. Plaintiff Stephen Burrowes' driver license clearly indicated that it was a "Restricted Use Driver License." (See Attachment 1).

19. Mr. Burrowes also attempted to provide defendant police officer with the "Restricted Use License/Privilege Attachment" form along with his restricted license. (See Attachment 2).

20. Police Officer Andre Morris and Police Officer Nathaniel Ramos (and potentially Sergeant Douglas Moodie as per Defendant's initial disclosures) ignored plaintiff Stephen Burrowes' legal driver license and accompanying "Restricted Use License/Privilege Attachment" form.

21. Plaintiff Stephen Burrowes told both defendant police officers repeatedly that he had a legal license as well as the appropriate paperwork and that he was legally driving to pick up his sick daughter from her school. Defendant police officers ordered him "not to say another word," placed plaintiff Stephen Burrowes in handcuffs and placed him in the back of the police car.

22. Plaintiff Stephen Burrowes was transported to the 69th Precinct located at 9720 Foster Avenue, Brooklyn, New York.

23. Plaintiff Stephen Burrowes was illegally held in custody until June 27, 2015, when plaintiff was charged with a single count of violating Vehicle and Traffic Law §511.01.

24. Subsequently, the lone charge against plaintiff Stephen Burrowes was dismissed upon motion of the District Attorney.

## FIRST CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Violations for Unlawful Stop*
(Against the Individual Officer Defendants)

4

25. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "24" with the same force and effect as if fully set forth herein.

26. Defendants violated the Fourth and Fourteenth Amendment because they stopped plaintiff without reasonable suspicion.

27. As a result, plaintiff sustained the damages alleged herein.

## SECOND CAUSE OF ACTION
*42 U.S.C. § 1983 - Fourth and Fourteenth Amendment Violations for False Arrest*
(Against the Individual Officer Defendants)

28. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "27" with the same force and effect as if fully set forth herein.

29. As a result of defendants' aforementioned conduct, plaintiff was subjected to an illegal, improper, and false arrest by the defendants. Plaintiff was taken into custody and caused to be falsely imprisoned, detained, confined, incarcerated and prosecuted by the defendants in criminal proceedings. In the above-mentioned actions, defendants acted intentionally, willfully, with malice, and without probable cause, privilege or consent.

30. Plaintiff was conscious of his confinement.

31. As a result of the foregoing, plaintiff's liberty was restricted for an extended period of time, plaintiff was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

## THIRD CAUSE OF ACTION
*42 U.S.C. § 1983- Fourth Amendment Violations for Failure to Intervene*
(Against the Individual Officer Defendants)

32. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "31" with the same force and effect as if fully set forth herein.

33. Defendant police officer who did not affect plaintiff's arrest, but observed the

unlawful actions alleged herein, had an opportunity to prevent such conduct, and failed to intervene.

34. By virtue of the foregoing, the defendant police officer who failed to intervene deprived the plaintiff of his Fourth Amendment rights under the United States Constitution to be free from unreasonable searches of his person and is liable to plaintiff under 42 U.S.C. §1983

### FOURTH CAUSE OF ACTION
*Monell* Claim/Municipal Liability
(Against Defendant City)

35. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "34" with the same force and effect as if fully set forth herein.

36. The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeated misconduct by the same officers, same units, and same precincts. In the fiscal year of 2012, there were 2,004 tort cases commenced against the New York City Police Department, up from 1,425 tort cases commenced for the fiscal year of 2008.[1] The City of New York paid approximately $500 million for torts against the New York City Police Department between 2009 and 2014[2], peaking in fiscal year of 2009 when it paid out more than $117 million.[1] In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[3]

37. The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive

---

[1] Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on July 6, 2015.

[2] http://nymag.com/daily/intelligencer/2014/10/428-million-in-nypd-related-settlements-paid.html
[3] "NYPD gives quite the payday; AP report reveals police have dolled out $1B to resolve lawsuits," by Associated Press Writers Colleen Long and Jennifer Peltz via Daily News wire Report, http://www.nydailynews.com/new-york/nypd-payday-ap-report-reveals-police-dolled-1b-resolve-lawsuits-article-1.189671, October 15, 2010 last visited on January 27, 2014.

individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan 547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

38. However, the City of New York has isolated NYPD officers like Police Officer Andre Morris and Police Officer John Doe from accountability for civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers. Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits. In 1999, former Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.[4] This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

---

[4] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/, last visited on January 27, 2014.

7

39. The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

40. Although statistics coming out of the New York City Police Department are sporadic at best, enough information exists to expose a pattern of misconduct at Brooklyn's 69th Precinct. According to a compilation of CCRB complaints from 2005-2009, the 69th Precinct was the subject of 211 complaints over that time period.[5] The Annual Report of the CCRB from 2014 shows that CCRB complaints against the 69th Precinct remained in the range of 50 to 100.[6] In addition to prior complaints and lawsuits, the City has been aware for some time, from lawsuits, notices of claim, complaints filed with the Civilian Complaint Review Board, and judicial rulings suppressing evidence and finding officers incredible as a matter of law, that a significant number of their police officers from the 69th precinct unlawfully search and seize citizens, bring charges against citizens with no legal basis, perjure themselves in charging instruments and testimony, and fail to intervene in and report the obviously illegal actions of their fellow officers.

41. Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD. The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly

---

[5] http://www.nyc.gov/html/ccrb/downloads/pdf/2014-annual-report-rev2layout.pdf
[6] http://www.nyc.gov/html/ccrb/downloads/pdf/2014-annual-report-rev2layout.pdf, see page 20.

occurring in the same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and false arrest suffered by plaintiff.

42. Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct. Without this notification, improper search and seizure practices and incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for. Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

43. All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal. "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department. Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

44. In Floyd v. City of New York, 08-cv-01034-SAS-HBP, Judge Scheindlin found that the City acted with "deliberate indifference toward the NYPD's practice of making

9

unconstitutional stops and conducting unconstitutional frisks" and adopted "a policy of indirect racial profiling by targeting racially defined groups for stops based on local crime suspect data." (Opinion and Order, dated August 12, 2013, P.13).

45. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights, without fear of reprisal.

46. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

### FIFTH CAUSE OF ACTION
*Monell* Claim/Municipal Liability
(Against Defendant City)

47. Plaintiff repeats, reiterates, and realleges each and every allegation contained in paragraphs numbered "1" through "46" with the same force and effect as if fully set forth herein.

48. Defendant City of New York, through the NYPD, has a policy and practice that in no way distinguishes between a motorist who drives illegally while his license is suspended and a motorist who drives legally while in possession of a restricted license issued by the New York State Department of Motor Vehicles.

49. New York Vehicle and Traffic Law clearly allows motorists who have been granted a restricted license to operate a motor vehicle on the roads of New York. Motorists who possess a restricted license are not allowed to drive everywhere, but may only operate between certain "restricted" locations (e.g. home, place of business, child's school, etc.).

50. Upon information and belief, Defendant City, through the NYPD, has chosen to ignore the legal distinction between a driver with a suspended license and one with a restricted

license. When patrol officers like defendant officers check the name of a motorist to inquire about that motorist's ability to legally drive in the state of New York, the NYPD system notifies the officer that a motorist's license is suspended, even if that motorist has a restricted license.

51. Defendant City of New York through the NYPD, has failed to take appropriate steps to insure that motorists who legally operate a motor vehicle under a restricted license on the roadways of New York are not falsely arrested and detained.

52. New York Vehicle and Traffic Law §530 allows the New York State Department of Motor Vehicles to issue a restricted license to individuals whose license has been revoked or suspended.

53. Defendant City, through the NYPD, cannot claim ignorance of the law. It also cannot avoid responsibility for its failure to properly train its employees regarding the clearly legal act of driving with a restricted license.

54. The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights. Despite such notice, the City has failed to take corrective action. This failure and these policies caused the officers in the present case to violate plaintiffs' civil rights.

55. Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

## **SIXTH CAUSE OF ACTION**
Respondeat Superior
(Against the City of New York)

56. Plaintiff repeats, reiterates, and realleges paragraphs "1" through "49" as if fully set forth herein.

57. The Individual Officer Defendants were employees of the City at the time of

11

the incidents alleged herein and each was acting at all relevant times within the scope of his or her employment with the City.

58.     The City is therefore vicariously liable for the tortious acts as described and alleged herein of the Individual Officer Defendants under the common law doctrine of respondeat superior.

59.     As a result of the foregoing, plaintiff Stephen Burrowes is entitled to compensatory damages in an amount to be determined by a jury and is further entitled to punitive damages against the individual defendants in an amount to be determined by a jury.

WHEREFORE, plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

    a.     Compensatory damages in an amount to be determined by a jury;

    b.     Punitive damages in an amount to be determined by a jury;

    c.     Costs, interest and attorney's fees, pursuant to 42 U.S.C. §1988; and

    d.     Such other and further relief as this Court may deem just and proper, including injunctive and declaratory relief.

Dated: New York, New York
      February 29, 2016

By:   Ken Womble

*A KWR*

Ken Womble
Attorney for Plaintiff Burrowes
Moore Zeman Womble, LLP
66 Willoughby St.
Brooklyn, New York 11201
(T) (718) 514-9100
(F) (917) 210-3700
womble@brooklynattorney.nyc

12